City of New York v Elizabeth St., Inc. (2024 NY Slip Op 50548(U))

[*1]

City of New York v Elizabeth St., Inc.

2024 NY Slip Op 50548(U)

Decided on May 8, 2024

Civil Court Of The City Of New York, New York County

Tsai, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 8, 2024
Civil Court of the City of New York, New York County

City of New York, Petitioner-Landlord,

against
Elizabeth Street, Inc., "JOHN DOE", "JANE DOE" 
 and "XYZ CORP." 207 Elizabeth Street, a/k/a W/S/O Elizabeth Street 217 
 N/O N/W/C/O Elizabeth Spring Sts. a/k/a Elizabeth Street Garden NEW YORK, 
 NEW YORK 10012, Respondents-Tenants, and ELIZABETH STREET GARDENS, INC., JOHN DOE, AND JANE DOE, Respondents-Undertenants.

Index No. LT-308120-21/NY

Department of Housing Preservation and Development of the City of New York, New York City (Harold P. Weinberg and Isidore Scipio of counsel), for petitioner.
Axelrod Fingerhut & Dennis, Manhattan (Osman Dennis of counsel), for respondent Elizabeth Street, Inc.

Richard Tsai, J.

On November 24, 2021, petitioner City of New York commenced this holdover summary proceeding against respondents Elizabeth Street, Inc., "John Doe", "Jane Doe", "XYZ Corp.", [*2]Elizabeth Street Garden, Inc.,[FN1]
John Doe, and Jane Doe, seeking to recover possession of the premises located at 207 Elizabeth Street in Manhattan.
Issue was joined as to respondent Elizabeth Street, Inc. on January 19, 2022. Respondents-tenants "John Doe", "Jane Doe" and "XYZ Corp." and respondents-undertenants Elizabeth Street Garden, Inc., John Doe and Jane Doe have never appeared in this action. 
By a decision and order dated September 12, 2022 and entered September 13, 2022, this court granted petitioner's motion to strike the second through ninth affirmative defenses of the answer of respondent Elizabeth Street, Inc. (see NYSCEF Doc. No. 44).
This court subsequently held a nonjury trial in courtroom 772 at 111 Centre Street, New York, New York on August 16, 17, 21, 2023; on September 12, 19, 21, 2023; and on October 12 and 27, 2023, on the stenographic record.[FN2]

On behalf of petitioner, James Whooley, Harrinarine Doobay, David Correia, and Sarah Leitson were sworn and testified at the trial. Petitioner submitted nine exhibits that were accepted into evidence, marked sequentially as Petitioner's Exhibits 1-3, Plaintiff's Exhibits 5 through 8, and Petitioner's Exhibits 9 and 10.[FN3]
Plaintiff's Exhibit 4 was not received in evidence (Aug. 17, 2023 tr at 15 lines 2-21). The court also took judicial notice of the petition, the notice of termination and the affidavits of service annexed to those documents (NYSCEF Docs. Nos. 1-8) (Aug. 21, 2023 tr at 12, lines, 7-15).
The court granted petitioner's application for leave to amend the petition to seek all post-petition use and occupancy (Aug. 21, 2023 tr at 26, lines 11-12).
On behalf of respondent Elizabeth Street, Inc., Christopher Marte, Joseph Reiver, Hai-Yin Kong, Magali Regis, Renee Green, Yvonne Brooks, and Jennifer Lee were sworn and testified at the trial. Respondent Elizabeth Street, Inc. did not submit any exhibits into evidence. 
On October 16, 2023, this court conducted a site inspection of the premises.
On December 20, 2023, respondent Elizabeth Street, Inc. submitted proposed findings of fact and a post-trial memorandum (NYSCEF Doc. Nos. 76-77); petitioner submitted a post-trial memorandum as well (NYSCEF Doc Nos. 78-80). FINDINGS OF FACT
Recitation, as required by CPLR 4213 (b), of the findings of essential facts relied upon by the court:
Ownership of the Premises
Whooley, a title examiner employed at the New York City Law Department, credibly [*3]testified that he conducted a title search for Block 493 Lot 30, also known as the Elizabeth Street Garden on 207 Elizabeth Street (Aug. 16, 2023 tr at 16, lines 9-10, 15; at 17, lines 20-23). He credibly stated that he has conducted hundreds of title searches during his career working at a title underwriting company and at the New York City Law Department (id. at 16, lines 20-25; at 17, lines 5-9). Whooley credibly testified that he has also conducted trainings for title examiners (id. at 17, lines 3-4). 
Whooley's testimony that a portion of Block 493 Lot 30 was transferred to the City by a deed dated July 9, 1853, was unsubstantiated, and thus not credible. According to Whooley, the 1853 deed between the Public School Society of the City of New York and the City of New York conveyed parcels which were identified as Lots 966, 967, and 968 in the 8th Ward of the City of New York (see Petitioner's Exhibit 1), which Whooley testified corresponded to the present parcel (Aug. 16, 2023 tr at 21, lines 10-23). However, Whooley's knowledge was based on a review of an index book in the City Register's Office (id. at 22, lines 6-8), the relevant portions of which were not introduced into evidence.[FN4]

According to documents filed with Supreme Court in 1902, the City of New York brought a condemnation proceeding to acquire title to premises situated on the westerly side of Elizabeth Street and easterly side of Mott Street, between Spring and Prince Streets (see Petitioner's Exhibit 2). Whooley credibly testified that the premises sought to be condemned refer to a portion of Block 493, Lot 30, based on the metes and bounds description (Aug. 16, 2023 tr at 27, lines 2-5; at 29, lines 2-4). 
The documents filed in the condemnation proceeding established that the City of New York acquired a portion of Block 493, Lot 30 via condemnation, on or about June 18, 1903. According to the condemnation documents, three persons were appointed by order dated October 3, 1902 as Commissioners of Estimate and Assessment to estimate and report on the amount to be awarded to property owner, lessees, and other parties or persons in interest, and to prepare the acquisition maps (see Petitioner's Exhibit 2).[FN5]
 The appointed commissioners prepared a report [*4]dated March 23, 1903, which was filed with the Court Clerk on May 8, 1903 (id.). By an order dated and entered on June 18, 1903, Supreme Court granted a motion to confirm the report of the commissioners (id.). "The effect, therefore, of the confirmation of the report, is to vest title in the city freed from any lien" (Carpenter v City of New York, 44 App Div 230, 233 [1st Dept 1899]; see also former Greater NY Charter § 1438a).[FN6]

The court found credible Whooley's testimony that a portion of Lot 30 was transferred to the City by a deed dated February 21, 1930 between July Development Co. Inc. and the City of New York (Aug. 16, 2023 tr at 34, lines 19-25), which was introduced in evidence (Petitioner's Exhibit 3). Although the deed itself referred to the parcel conveyed as "Section 2, Block 493, Lot 23" (id.), Whooley concluded that parcel was part of present-day Lot 30 based on the metes and bounds description in the deed (id. at 36, lines 23-24).[FN7]

In sum, petitioner established that it is the title owner of two of the three parcels which consist of the premises at issue.
The Premises Lease
Pursuant to a written lease executed in January 1991, petitioner, acting through the Department of General Services, leased approximately 20,000 square feet of land located on Block 493, P/O Lot 41, described as "W/S/O Elizabeth Street 217' N/O N/W/C/O Elizabeth Spring Sts" to respondent Elizabeth Street, Inc. (tenant), for the month of February 1991, at a monthly rent of $4,000.00 (Petitioner's Exhibit 5). Paragraph 34 of the lease states, in relevant part, "If LANDLORD does not terminate the tenancy and TENANT remains in possession of the Premises after the end of the Term, this Lease shall be deemed extended on a month-to-month basis" (id.). 
After February 28, 1991, respondent Elizabeth Street Inc. continued as a month-to-month [*5]tenant. According to a rent history of the premises, which was maintained by the New York City Department of Citywide Administrative Services (DCAS),[FN8]
the City has received rent for the months of February 1991 through May 2018 (see Plaintiff's Exhibit 8). 
By a letter dated May 21, 2018, DCAS assigned jurisdiction and management of Block 493, Lot 30 in Manhattan to the Department of Housing Preservation & Development (HPD). By a letter dated May 21, 2018 addressed to tenant, DCAS advised that, effective May 21, 2018, "HPD has assumed all management responsibilities associated with the Premises and the Lease" (Plaintiff's Exhibit 7). 
The Garden on the Premises
Reiver credibly testified that Elizabeth Street, Inc. was his father's corporation, and that he is now the administrator of his father's estate and the manager of Elizabeth Street, Inc. (Sep. 12, 2023 tr at 22, lines 9-12). Reiver credibly testified that he manages the Elizabeth Street Garden daily, overseeing and helping to maintain the grounds, managing programs for the public, partaking in events there, and interacting with City and State government to help preserve the garden (id. at 22, lines 22-25; at 23, lines 1-3). 
On cross examination, Reiver credibly testified that, at the inception of lease, the premises were an outdoor extension of the Elizabeth Street Gallery, a gallery owned by his father that dealt in antiquity and sculptures (id. at 33, lines 7, 14-20). Reiver credibly stated that the lot was later landscaped, with trees and a lawn planted, and gardening beds filled (id. at 33, lines 8-9). The gallery moved next to the garden in 2005 (id. at 34, lines 11-12), which was when the premises were opened to the public (id. at 35, lines 7-10). 
Sarah Leitson, the Director of the Senior Affordable Rental Apartment Program at the Department of Housing Preservation and Development, credibly testified that, in 2013, the City of New York began publicly discussing a potential Request for Proposal (RFP) for affordable senior housing to be built at 207 Elizabeth Street (Oct. 27, 2023 tr at 14, lines 6-7).
Meanwhile, according to Reiver, people from the community came together in 2013 in an effort to expand the operations and public use of the space as a community garden (Sep. 12, 2023 tr at 35, lines 11-13). A non-profit was formed, managed by the community and volunteers, called Friends of the Elizabeth Street Garden, which was later called Elizabeth Street Garden (id. at 35, lines 17-25; at 36, lines 1-2). Green, the chair of the board of Friends of the Elizabeth Street Garden, credibly testified that the opening of the space to the general public coincided with the City's plans for redevelopment of the space (Sep. 19, 2023 tr at 16, lines 18-21).
Reiver credibly testified as follows: the main entrance to the premises is on Elizabeth Street, and it is just over 20,000 square feet (Sep. 12, 2023 tr at 25, lines 8-10). The premises is a community garden filled with sculptures and artifacts, with trees (including fruit trees), garden beds, resting areas, shaded areas and lawn areas (id. at 25, lines 11-15). The garden is open all [*6]year long, free to the public, and it receives anywhere from 200 to 2,000 visitors daily (id. at 23, line 6; at 25, lines 20-21; at 38, lines 3-5). The garden has neoclassical sculptures, sphinxes, various urns, and a balustrade (id. at 30, lines 2-9).
According to Reiver, over 400 volunteers help to maintain the grounds, help with public programs, and work with local organizations and local business to set up programs such as movie nights, poetry readings, and music performances (Sep. 12, 2023 tr at 23, lines 6-13). Reiver has led public educational workshops at the local public schools, such as PS 130, PS1, and City-As-School, as well as NYU and the New School, teaching students gardening and sustainable stewardship and planting (id. at 24, lines 1-8). The garden hosts larger public events such as a Halloween pet parade for dogs and other pets in costume, and solstice and equinox celebrations (id. at 24, lines 16-22).
Brooks credibly testified as follows: she is an employee at McNally Jackson Books, a bookstore a few blocks from the garden (Sep. 19, 2023 tr at 25, lines 11-14; at 29, lines 18-19). Brooks stated that, approximately ten years ago, she started partnering with the Elizabeth Street Garden for children's programs (id. at 28, lines 23-25). For example, Brooks invited a children's author to read at the garden his book, We Dig Worms!, and kids ages 10 and 12 then released worms in the garden with their parents and caretakers (id., lines 5-14). According to Brooks, the bookstore has about 30-40 events at the garden each year, such was bi-weekly poetry readings under 50-foot tall trees (id. at 32, lines 6-10).
Kong credibly testified as follows: she is the Executive Director of ThinkChinatown, a community non-profit. For the past two years, ThinkChinatown has held a Chinatown arts festival at the garden (Sep. 21, 2023 tr at 13, lines 11-13), and it has held tai chi workshops and performances of Chinese opera and traditional instruments at the garden (id., lines 14-17). According to Kong, the loss of the garden would be a loss of a valuable venue for the non-profit, as free space for programming is hard to find in lower Manhattan, and the Elizabeth Street Garden partners with the non-profit to cover costs for the programming and artists (id. at 15, lines 24-25; at 16, lines 1-6).
Lee credibly testified as follows: she is a third-grade special education teacher at PS 130, which is about a 15-minute walk (about 8 blocks) from the garden (Sep. 21, 2023 tr at 42, lines 6-10, 22-23; at 43, lines 22-23; at 44, lines 2-3). For the past two years, from April to June, Lee and a co-teacher take a class of 25-30 students on bi-weekly, walking trips to the garden (id. at 44, lines 13-15; at 45, lines 16-17; at 46, lines 13-16; at 49, lines 24; at 50, line 1). About 40 percent of those students are special needs students (id. at 43, lines 9-10; at 46, lines 11-12). The trips integrate what Lee teaches in the classroom, such as the plant life cycle, with what is taught at the garden about plant care and plant growth (id. at 44, lines 13-18; at 45, lines 1-8; at 48, lines 16-18). The walking trips save money because the garden is free and a school bus is not needed (id. at 45, lines 14-17). The hands-on experiences are "really helpful" for the special needs students (id. at 48, lines 16-18). According to Lee, many teachers of other grades at PS 130 also take field trips with their students to the garden (id. at 47, lines 5-7; at 51, lines 10-14).
Several witnesses credibly testified that they felt a sense of community as a result of the garden, which was part of their daily routine. Green testified that the garden had created a community whose members had consoled her after her husband's death (Sep 19, 2023 tr at 11, lines 6-13). Kong testified that she went to the garden daily to cope with the stress of the pandemic (Sep. 21, 2023 tr at 16, lines 22-25; id. at 17, line 1). Marte, a City Councilmember and a former garden volunteer who has visited the garden for almost a decade, likened the [*7]garden to a community center (Sep. 12, 2023 tr at 9, line 8-10). According to Marte, his parents typically go to the garden on their way home from Sunday mass and their regular errands (id. at 8, lines 5-6).
Termination of the Lease
By a notice dated September 3, 2021, petitioner, acting through the HPD, elected to terminate the month-to-month lease, effective October 31, 2021 (Petitioner's Exhibit 9). Based on a certified copy of the rent history (Petitioner's Exhibit 10), Correia, a Real Property Manager employed by HPD in the Division of Property Asset Management, testified that the last payment of rent from tenant was received on October 12, 2021, in the amount of $4,000 (Aug. 21, 2023 tr at 15, lines 16-20).
Leitson credibly testified that HPD plans to develop the premises into 124 units of affordable housing targeting low-income seniors, 50 of which are set aside for homeless households (Oct. 12, 2023 tr at 14, lines 12-19). The current proposal anticipates 6,700 square feet of open space, both open to the sky and accessible to the general public 365 days a year (id. at 15, lines 5-10). According to Leitson, a minimum of eight months to a year is required for site preparation before construction begins (id. at 15, lines 13-25). Ideally, based on eight months of site preparation, and construction beginning in June 2024, units could be ready to occupy in the summer of 2026, based on a 24-month construction period (id. at 17, lines 20-24).
Witnesses for both sides gave competing information as to the whether there are alternative sites to the premises for affordable housing. 
Marte testified that 388 Hudson Street, 5 Howard Street, 91 East Broadway, and potentially 100 Division Street could be used to build affordable housing (Sep. 12, 2023 tr at 15, lines 1-5). Leitson testified that HPD was in the preplanning process for affordable housing at 388 Hudson Street (Oct. 12, 2023 tr at 16, lines 20-23). However, Leitson stressed that another site would not be seen as an alternative site, given that an HPD analysis indicated that the neighborhood was in the bottom third of all neighborhoods citywide for low-cost costing, and given the tremendous need for affordable housing overall in New York City (id. at 17, lines 1-13).
Site Inspection
The main entrance to the Elizabeth Street Garden is on Elizabeth Street, approximately 110 feet south of the southwest corner of Prince and Elizabeth Streets. After entering the garden, the court observed a stone path, which essentially divided the garden in two. To the immediate left was a large garden urn and two statues. The court also observed a wood bench and two stone benches around various flowering plants, and a spire in the distance. To the right, the court observed an unpaved seating area with chairs and nine statues, with a gazebo and two large trees roughly 3 to 4 stories tall in the distance. Classical style sculptures, both large and small, were spread throughout the garden. 
The stone path led west towards the other end of the garden bounded by Mott Street. At the end of the path were bricks and a tall garden urn. An old wooden shed stood to the left, in between a tree that appeared four stories tall, and another tree whose branches extended over the fence of the garden onto Mott Street. To the right in the distance was a tall, partially covered structure. Past the covered structure were two stone benches and a large tree.
Walking towards the covered structure, the court observed steps which lead up to an [*8]elevated platform, which had a clear view of several beds of flowering plants. The large, unobstructed view of the open sky from the garden was in marked contrast to surrounding buildings. The court observed people sitting out in the sun; others were eating and talking to one another; one person appeared to be sketching a drawing. 
Past the flower beds, there was a paved area behind a locked gate, which was closed to the public. The court observed bags of soil stacked in the gated area, along with a forklift. 
The Holdover Proceeding
On November 24, 2021, petitioner commenced this holdover proceeding (see NYSCEF Doc. Nos. 1-6 [notice of petition and petition]). Correia credibly testified that, after the lease was terminated, the premises were still occupied, and tenant did not surrender possession of the premises back to the City of New York (Aug. 21, 2023 tr at 23, lines 19-25; at 24, lines 7-8).

CONCLUSIONS OF LAW
As a threshold matter, the court must address whether petitioner has standing to bring this holdover proceeding, because tenant argues that petitioner failed to prove that it is the owner of the premises located at 207 Elizabeth Street, as alleged in the petition (see NYSCEF Doc. No. 1 [petition] ¶ 1).
"RPAPL § 721 contains a list of parties with standing to commence a summary landlord-tenant proceeding" (Dan M. Blumenthal, 2014 Prac Commentaries, McKinney's Cons Laws of NY, RPAPL 721). RPAPL 721 (1) provides that a summary eviction proceeding may be brought by "[t]he landlord or lessor." 
Contrary to tenant's argument, proof of ownership of the premises is not a necessary element of a prima facie case to recover possession (see Mason v Foxcroft Vil., Inc., 67 AD2d 1012, 1013 [3d Dept 1979]). 
"[A] tenant who has once acknowledged his landlord's title, and taken and held possession under him, and who has not surrendered his lease, nor been evicted from the premises, and who can prove no fraud against the landlord nor any transfer of the latter's title after the lease began, is precluded from denying that the landlord, under whom he has so held and claimed, is the owner of the property"
(3 Rasch, New York Landlord and Tenant-Summary Proceedings § 5:8 [5th ed.]). "To the extent that respondent[ ] seek[s] to challenge petitioner's ownership of the premises, questions of title and ownership are not properly the subject of a summary proceeding" (Mattis v Brockington, 19 Misc 3d 133[A], 2008 NY Slip Op 50664[U] [App Term, 1st Dept 2008]; Ferber v Salon Moderne, Inc., 174 Misc 2d 945, 946 [App Term, 1st Dept 1997]).
In Ferber, the petitioner had leased commercial premises to the tenant in petitioner's own name as "Owner," even though he had transferred the premises to his wife for "estate planning" purposes (174 Misc 2d at 946). Although the Civil Court had granted the tenant's motion to dismiss the summary proceeding on the ground that the petitioner did not have title to the premises, the Appellate Term reversed the court below and reinstated the petition (id.).
However, tenant argues that courts have either not followed Ferber consistently or have specifically rejected that a tenant is estopped from challenging the petitioner's standing, citing [*9]Muzio v Rogers (20 Misc 3d 143[A], 2008 NY Slip Op 51763[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2008]) and Decaudin v Velazquez (15 Misc 3d 45 [App Term, 2d Dept 2007]).
As tenant points out, an allegation that petitioner is not the owner of the premises may be raised as a defense, where, after leasing the premises to the tenant, the landlord then transferred its interest in the property to a third-party, either before or after commencement of the summary proceeding (Muzio, 20 Misc 3d 143[A], 2008 NY Slip Op 51763[U]; see Terner v Brighton Foods, Inc., 27 Misc 3d 1225[A], 2010 NY Slip Op 50895[U] [Civ Ct, Kings County 2010]). Here, there was no evidence at the trial that petitioner had transferred its interest after leasing the premises to tenant.
The Appellate Term, Second Department has also permitted tenants to dispute the petitioner's title to the premises as an affirmative defense in other circumstances (Decaudin, 15 Misc 3d 45). In Decaudin, the landlord asserted that he had purchased the property from the tenant, but the tenant's sister, who was an occupant on the property, asserted that the property belonged to her mother (id. at 46). The tenant's sister contended that the tenant's sale of the property to the landlord was not valid because their mother's power of attorney required the tenant and his sister to act jointly with regard to any real estate transactions (id.).
Decaudin cannot be reconciled with Ferber. The defense allowed in Decaudin —that the landlord did not, in fact, have title to the premises when the landlord leased the property to the tenant—was not permitted in Ferber. To the extent that a split of authority exists between the judicial departments, this court is bound to follow precedent of the Appellate Term, First Department (81 Franklin Co. v Ginaccini, 149 Misc 2d 124, 128 [Civ Ct, NY County 1990]). Thus, the court rejects tenant's argument that the case should be dismissed because petitioner did not establish, by a preponderance of the evidence, that it owns title to the premises.[FN9]

Here, the written lease with tenant established that petitioner is the landlord, and the credible evidence established that tenant has been paying rent to petitioner for at least 27 years, from February 1991 to May 2018 (see Plaintiff's Exhibit 8). Tenant is therefore precluded from denying petitioner's standing as a landlord to bring this holdover proceeding.
Turning to the merits, "for relief to be granted to a petitioner in a holdover proceeding, the petition must demonstrate that the tenancy expired prior to the commencement of the proceeding" (Parkview Apts. Corp. v Pryce, 58 Misc 3d 155[A], 2018 NY Slip Op 50187[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2018]).
Based on the documentary evidence and the credible testimony of petitioner's witnesses, petitioner met its prima facie burden that the month-to-month tenancy between petitioner and respondent, was terminated, effective October 31, 2021, prior to commencement of this holdover proceeding. Tenant remained in possession after expiration of the lease, without petitioner's permission.
Therefore, petitioner is entitled to recover possession of the leased premises from tenant.
Additionally, petitioner is entitled to recover use and occupancy from tenant after the lease was terminated, as of November 1, 2021. 
"The obligation of a tenant who holds over after the end of his lease to pay use and [*10]occupancy is imposed by law based on a theory of quantum meruit, and use and occupancy should generally be set at the fair rental value of the premises. Such value can be established by proof of rentals for comparable premises or by proof of the rent paid under the expired lease" (Vanchev v Mulligan, 52 Misc 3d 138[A], 2016 NY Slip Op 51121[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2016] [internal citations omitted]). "The reasonable value of use and occupancy is the fair market value of the premises after the expiration of the lease, and it is the landlord, not the tenant, who has the burden of proving reasonable value of use and occupancy" (Mushlam, Inc. v Nazor, 80 AD3d 471, 472 [1st Dept 2011] [internal citation omitted]). "In determining the reasonable value of use and occupancy, the rent reserved under the lease, while not necessarily conclusive, is probative" (id.). 
Here, the amount of use and occupancy that petitioner seeks is based on the monthly rent prior to the expiration of the lease, i.e., $4,000. Therefore, petitioner is entitled to recover use and occupancy from November 1, 2021 to October 27, 2023, the last date of the trial, in the total amount of $95,483.87 (i.e., $4,000/month x 23 months and 27/31 days).[FN10]

Petitioner is also entitled to prejudgment interest on the use and occupancy (see Solow v Bradley, 273 AD2d 75, 75-76 [1st Dept 2000]). Although petitioner makes no argument as to the applicable rate or the appropriate date for calculating prejudgment interest, this court awards prejudgment interest to petitioner at the statutory rate of nine percent per annum, pursuant to CPLR 5004 (see Hugh O'Kane Elec. Co., LLC v MasTec N. Am., Inc., 45 AD3d 413, 414 [1st Dept 2007]). 
The court further exercises its discretion to select February 1, 2023 as a "single reasonable intermediate date" for purposes of calculating prejudgment interest, pursuant to CPLR 5001 (b) (see 595 Broadway Assoc. v Bikman, 2003 NY Slip Op 51254[U]; see also Solow Mgt. Corp. v Tanger, 43 AD3d 691 [1st Dept 2007]). This date is halfway between November 1, 2021 and May 3, 2024, the date of the verdict (see Rose Assoc. v Lenox Hill Hosp., 262 AD2d 68, 69 [1st Dept 1999] [midway point of entire holdover period constitutes a "single reasonable intermediate date"]; MUFG Union Bank, N.A. v Axos Bank, 225 AD3d 545 [1st Dept 2024] ["The endpoint should, however, have been the date of the verdict"]). 
Petitioner is also awarded costs and disbursements against tenant, in the total amount of $50.00 (RPAPL 747; see also NY City Civ Ct Act § 1906-a). First, petitioner is entitled to recover as a disbursement the fee paid for the special proceeding, in the amount of $45.00 (see NY City Civ Ct Act § 1906-a). Second, petitioner is also to recover $5.00 in costs for each necessary respondent served with the notice of petition by a person other than a sheriff or marshal (Civil Court Act 1906-a). 
As to respondents-tenants "John Doe", "Jane Doe" and "XYZ Corp.," and respondents-undertenants Elizabeth Street Gardens, Inc., John Doe, and Jane Doe, who did not appear in this proceeding, petitioner's counsel requested that an inquest be scheduled (Oct. 27, 2023 tr at 37, lines 19-21).
Petitioner's counsel is directed to e-file all the exhibits that were marked at the trial, including documents which were not received into evidence (see CPLR 409 [a]). Petitioner's [*11]counsel should also promptly retrieve the trial exhibits from the Part 52 courtroom (111 Centre Street, Room 772) within 35 days of entry of this decision. If petitioner's counsel does not retrieve the exhibits before then, any exhibits that are photocopies may be discarded by courtroom staff, in accordance with DRP-185 (see 
https://nycourts.gov/courts/nyc/SSI/directives/DRP/DRP185.pdf 
[last accessed May 1, 2024]). Original documents which are not timely retrieved would be returned by regular mail at the court's expense by court staff to petitioner's counsel (id).
Stay of the Eviction [FN11]

Tenant argues for a stay of the eviction pending the outcome of the appeal of the Appellate Division, First Department's decision in Matter of Elizabeth Street Garden, Inc. v City of New York (217 AD3d 599 [1st Dept 2023]). There, the Appellate Division dismissed an Article 78 petition challenging HPD's declaration of negative environmental impact of the proposed development of the premises for low-income senior housing. Argument before the Court of Appeals is set for May 15, 2024 (see 
https://www.nycourts.gov/ctapps/calendar/2024/monthly/May24fullcal.pdf [last accessed April 30, 2024]). Petitioner argues that the court should not grant a stay greater than three months, given petitioner's need to conduct pre-development work at the site, such as test boring, soil testing, and site preparation.
The court retains the inherent power to stay a warrant for good cause shown prior to the execution thereof (see Harvey 1390 LLC v Bodenheim, 96 AD3d 664, 664 [1st Dept 2012]). "A determination as to whether good cause exists is entrusted to the sound discretion of the court upon review of the particular facts and circumstances presented" (id.). "These cases involve fact-sensitive inquiries, and must be decided after review of all the circumstances, including the extent of the delay, the length and nature of the tenancy, the amount of the default and the particular tenant's history, as well as a balancing of the equities of the parties" (id. at 666).
Additionally, the Appellate Term held that, "where commercial tenancies are involved the Civil Court may stay issuance of a warrant of eviction under circumstances of hardship" pursuant to CPLR 2201 (Eskandar Corp. v Velis, 110 Misc 2d 193, 194 [App Term, 1st Dept 1981], citing Masovi Corp. v. Wagner's Tri-Boro Restaurant, NYLJ, Oct 27, 1980 [App Term, 1st Dept];[FN12]
Mountbatten Equities v Tabard Press Corp., 88 Misc 2d 831, 832 [App Term, 1st Dept 1976]; see also Daniel Finkelstein & Lucas A. Ferrara, Landlord and Tenant Practice in New York § 15:628 [West's NY Prac Series, vol G, n 2 [2022-2023 ed] ["A stay is warranted 'where the tenant can demonstrate that a temporary delay in the execution of the warrant will [*12]avoid an irreparable loss of business equity'"]). "It is not the landlord who must justify its need for reentry but the tenant who must establish its need to remain in possession lest irreparable injury result" (Eskandar Corp. 110 Misc 2d at 195). However, a stay cannot be indefinite (id.).
City of New York v Falcone (160 Misc 2d 234, 235 [App Term, 2d Dept 1994]) is instructive. There, the petitioner commenced a holdover proceeding against commercial tenants involving premises which had been used as a wholesale construction brick and stone yard for over 40 years. The Appellate Term, Second Department ruled that the stay granted by the lower for eight months from the date of entry of the judgment was not an abuse of discretion. The Appellate Term noted that additional time was required to permit the tenants to remove the materials from the site to continue and conduct their business, for the premises consisted of a lot on which there were over three million bricks, sheetrock, and other construction material. 
Here, tenant has established good cause for issuance of a stay of the warrant of eviction pursuant to CPLR 2201. The site visit confirmed the presence of a many heavy sculptures, urns, stone benches, and a balustrade on the premises, none of which are easily removed within 14 days after service of a marshal's notice of eviction. Even though a forklift was on site, tenant would also need more time to salvage the smaller trees and plants in the garden which could be relocated for the continued existence of the garden.
In this court's discretion, a stay of four months from the entry of judgment in this case is therefore granted.

VERDICT
As against respondent Elizabeth Street, Inc., the court finds in favor of petitioner. Petitioner is awarded a judgment of possession against respondent Elizabeth Street, Inc. for the premises, i.e., 207 Elizabeth Street, a/k/a W/S/O Elizabeth Street 217' N/O N/W/C/O Elizabeth Spring Sts., a/k/a The Elizabeth Street Garden, County of New York, State of New York, City of New York 10012, identified on the New York City Tax Map as Block 493, Lot 30, formerly part of Block 493, Lot 41, in Manhattan.
Petitioner is also awarded a money judgment against respondent Elizabeth Street, Inc., in the amount of $95,483.87, with prejudgment interest at the rate of 9% from February 1, 2023.

 ORDER
Accordingly, it is hereby ORDERED that the Clerk is directed to enter a final judgment granting the holdover petition and awarding possession of the premises—i.e., "207 Elizabeth Street, a/k/a W/S/O Elizabeth Street 217' N/O N/W/C/O Elizabeth Spring Sts., a/k/a The Elizabeth Street Garden, County of New York, State of New York, City of New York 10012, identified on the New York City Tax Map as Block 493, Lot 30, formerly part of Block 493, Lot 41"—to petitioner City of New York against respondent Elizabeth Street, Inc., along with a money judgment in petitioner's favor and against respondent Elizabeth Street, Inc., in the amount of $95,483.87, with prejudgment interest at the rate of 9% from February 1, 2023, along with costs and disbursements in the amount of $50.00; and it is further
ORDERED that a warrant of eviction shall be issued forthwith; and it is further
ORDERED that execution of the warrant is stayed for four months from the date of entry of the judgment. The earliest execution date of the warrant is September 10, 2024; and it is [*13]further
ORDERED that the petition is severed as against respondents-tenants "John Doe", "Jane Doe" and "XYZ Corp.," and respondents-undertenants Elizabeth Street Garden, Inc., John Doe, and Jane Doe, and an inquest is directed as to these respondents; and it is further
ORDERED that the inquest is scheduled for June 11, 2024 at 11:00 a.m. in Part 52, 111 Centre Street, Room 772, New York, NY 10013; and it is further
ORDERED that petitioner is directed to e-file all the exhibits that were marked at the trial.
This constitutes the decision, verdict, and order of the court.
Dated: May 8, 2024
New York, New York
ENTER:
RICHARD TSAI, J.
Judge of the Civil Court

Footnotes

Footnote 1: In the notice of petition, this respondent-undertenant was named as "Elizabeth Street Garden, Inc." in the caption (NYSCEF Doc. No. 6). In the petition, this respondent-undertenant was named as "Elizabeth Street Gardens, Inc." in the caption and as "Elizabeth Street Garden, Inc." in the body of the petition (NYSCEF Doc. No. 1).

Footnote 2: The court reporters were: Antonia Gianiks (August 16); Dewayne Schmidt (August 17, September 19, October 27); Robin Lindner (August 21); Francine Sky (September 12, September 21); and Kelley Minogue (October 12).

Footnote 3: The court reporter marked the exhibits with "Plaintiff's Exhibit" tabs because "Petitioner's Exhibit" tabs were not available.

Footnote 4: Petitioner's Exhibit 1 was received in evidence subject to connection (Aug. 16, 2023 tr at 2, lines 9-10). However, as counsel for respondent Elizabeth Street Inc. pointed out, petitioner did not submit additional evidence (e.g., the relevant pages of the index book of the City Register) to establish the connection of the 1853 deed to the particular lot of the premises (Oct. 27, 2023 tr at 12, lines 4-23). 

"Upon failure of a party to fulfill the requirements of further evidence, the offered evidence must be struck" (Guide to NY Evid rule 4.05, Conditional Relevance, 
https://nycourts.gov/judges/evidence/4-RELEVANCE/4.05_CONDITIONAL%20RELEVANCE.pdf [last accessed April 26, 2024]).

Footnote 5: Petitioner's Exhibit 2 was initially accepted into evidence as an official record of the court, for the limited purpose showing that the property sought to be condemned was part of Block 493, Lot 30 (Aug. 16, 2023 tr at 33, lines 17-21). However, the court later clarified the ruling was based on this court's understanding of the present-day condemnation proceedings, and that petitioner would have to provide the relevant law to the court to establish that vesting of title occurred in the condemnation proceeding (Aug. 17, 2023 tr at 2-4, lines 1-19). Petitioner submitted the relevant provisions of the former Greater New York Charter (Oct. 27, 2023 tr at 24-25, lines 1-25).

Footnote 6: Former Greater New York Charter § 1438a (as added by L1897, ch 378, and amended by L1901 ch 466) stated, in relevant part, "And on the final confirmation of said report, the said City of New York, except as hereinafter provided, shall become and be seized, in fee simple absolute, of the lands included in said report, the same to be converted, appropriated and used to and for the purposes for which the same shall be acquired accordingly."

Footnote 7: As tenant pointed out, the metes and bounds description of the plot appears to contain an ambiguity in the starting point of the boundary, which is stated as "BEGINNING at a point on the westerly side of Elizabeth Street distant One hundred and hundred and thirty-two feet Eight and one-half inches southerly from the corner formed by the intersection of the southerly side of Prince Street with the westerly side of Elizabeth Street . . ." (Petitioner's Exhibit 3 [emphasis added]). However, the ambiguity would not affect the admissibility of the deed, and it is not material to this holdover proceeding, as this is not a property boundary dispute.

Footnote 8: With respect to real property, the Commissioner of DCAS has the power to, among other things, "to purchase, lease condemn or otherwise acquire real property for the city" and "to sell, lease, exchange or otherwise dispose of real property of the city" (NY City Charter § 824).

Footnote 9: Although not argued by petitioner, the court notes that tenant did not raise as an affirmative defense in the answer that the City did not have title to the premises (see NYSCEF Doc. No. 11). 

Footnote 10: Liability for use and occupancy must be apportioned according to the tenant's actual use of the subject premises (see Warner v Lyon, 63 Misc 3d 157[A], 2019 NY Slip Op 50836[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2019]).

Footnote 11: As this court noted at the trial, it is unorthodox that a respondent's case in chief at trial would include evidence on whether a stay should be granted, without knowing the outcome of the trial (Aug. 21, 2023 tr at 44, lines 2-25; at 45, lines 1-4; Sep. 12, 2023 tr at 14, lines 7-18). Stays of the eviction are generally sought by motion after the trial. Nevertheless, petitioner did not bring a motion in limine to exclude such testimony from the trial after being given the opportunity to do so (id.). Instead, petitioner opted to call a rebuttal witness against the need for a stay (Aug. 21, 2023 tr at 45, lines 23-24; Oct. 12, 2023 tr at 9, lines 11-16).

Footnote 12: See also Exhibit A to petitioner's post-trial memorandum (NYSCEF Doc. No. 80).